UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANK GENOVESE,<br><br>Plaintiff,<br><br>v.<br><br>TRILLIUM THERAPEUTICS INC., JAN SKVARKA, LUKE BESHAR, MICHAEL KAMARCK, CATHERINE MACKEY, SCOTT MYERS, PAOLO PUCCI, HELEN TAYTON-MARTIN, and PAUL WALKER,<br><br>Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**BACKGROUND**

1.  This action concerns a proposed transaction ("Proposed Transaction") announced on August 23, 2021, pursuant to which Trillium Therapeutics Inc. ("Trillium" or the "Company") will merge with Pfizer Inc. ("Pfizer").

2.  On August 20, 2021, Trillium's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an arrangement agreement (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Trillium's stockholders will receive $18.50 in cash for each share of Trillium common stock they own (the "Merger Consideration").

3.  On September 27, 2021, in order to convince Trillium's shareholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading

Proxy Statement (the "Proxy") with the United States Securities and Exchange Commission ("SEC").

4.  The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

5.  In addition, a special meeting of Trillium's stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so Trillium's stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6.  This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.  This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.  Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received

substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, a Trillium shareholder.

10. Defendant Trillium is corporation existing under the laws of the Province of British Columbia and a party to the Merger Agreement. Trillium shares are traded on the NASDAQ under the ticker symbol "TRIL."

11. Defendant Jan Skvarka is the Company's President, Chief Executive Officer and director of the Company.

12. Defendant Luke Beshar is a director of the Company.

13. Defendant Michael Kamarck is a director of the Company.

14. Defendant Catherine Mackey a director of the Company.

15. Defendant Scott Myers is a director of the Company.

16. Defendant Paolo Pucci is a director of the Company.

17. Defendant Helen Tayton-Martin is a director of the Company.

18. Defendant Paul Walker is a director of the Company

## FACTS

19. Trillium is a clinical stage immuno-oncology company developing innovative therapies for the treatment of cancer. Company has two clinical programs, TTI-622 and TTI-621, target CD47, a "don't eat me" signal that cancer cells frequently use to evade the immune system.

20. Pfizer is a research-based, global biopharmaceutical company. Pfizer applies

science and its global resources to bring therapies to people that extend and improve their lives through the discovery, development, manufacture, marketing, sale and distribution of biopharmaceutical products worldwide.

21. On August 20, 2021, Trillium's Board caused the Company to enter into the Merger Agreement.

22. According to the press release announcing the Proposed Transaction:

**Pfizer to Acquire Trillium Therapeutics Inc.**

\*\*\*

NEW YORK and CAMBRIDGE, Mass., Aug. 23, 2021 – Pfizer Inc. (NASDAQ: PFE) and Trillium Therapeutics Inc. (NASDAQ/TSX: TRIL) today announced that the companies have entered into a definitive agreement under which Pfizer will acquire Trillium, a clinical stage immuno-oncology company developing innovative therapies for the treatment of cancer. Under the terms of the agreement, Pfizer will acquire all outstanding shares of Trillium not already owned by Pfizer for an implied equity value of $2.26 billion, or $18.50 per share, in cash. This represents a 118% premium to the 60-day weighted average price for Trillium.

\*\*\*

**Additional Transaction Details**

The proposed acquisition of Trillium is to be completed by way of a statutory plan of arrangement under the Business Corporations Act (British Columbia) and subject to customary closing conditions, including approval of 66⅔% of the votes cast by Trillium shareholders, voting together as one class, at a special meeting of Trillium and approval of 66⅔% of the votes cast by Trillium shareholders and warrant holders, voting together as one class, at a special meeting of Trillium. Completion of the acquisition is also subject to court and regulatory approval, as well as certain other closing conditions customary for transactions of this nature.

Pfizer's financial advisors for the transaction are BofA Securities, Inc., with Ropes & Gray LLP and Norton Rose Fulbright Canada LLP acting as its legal advisors. Centerview Partners LLC served as Trillium's financial advisor, while Goodwin Procter LLP and Baker McKenzie LLP (Canada) served as its legal advisors.

23. The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in

connection with the Proposed Transaction.

24. It is therefore imperative that the Company's shareholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

25. Section 5.1 of the Merger Agreement has a "non-solicitation" clause that prevents Trillium from soliciting alternative proposals and constrains its ability to negotiate with potential buyers:

**No Solicitation**

(1)     Except as expressly provided in this Article 5, the Corporation shall not, and shall cause its Subsidiaries and its and their respective Representatives not to, directly or indirectly:(a)solicit, initiate, knowingly facilitate or knowingly encourage (including by furnishing non-public information or providing copies of, access to, or disclosure of, any confidential information of the Corporation or any Subsidiary, or entering into any form of agreement, arrangement or understanding) any inquiries or proposals or offers that constitute, or would reasonably be expected to constitute or lead to, an Acquisition Proposal;(b) knowingly encourage, enter into or otherwise engage or participate in any discussions or negotiations with (or provide any non-public information or data to) any Person (other than the Purchaser) with respect to, any inquiry, proposal or offer that constitutes, or would reasonably be expected to constitute or lead to, an Acquisition Proposal;(c) make a Change in Recommendation; (d) grant any waiver under any standstill or similar agreement with any Person (other than the Purchaser); or (e)accept,approve, endorse, enter into or recommend, or propose publicly to accept, approve, endorse or recommend, any Acquisition Proposal.

26. In addition, Section 7.3 of the Merger Agreement requires Trillium to pay up to a $83,235,000. "termination fee" in the event this agreement is terminated by Trillium and improperly constrains the Company from obtaining a superior offer. Such a termination fee is excessive and unduly restrictive to Trillium's ability to consider other offers.

27. Defendants filed the Proxy with the SEC in connection with the Proposed Transaction.

28. The Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading.

29. First, the Proxy omits material information concerning Trillium's financial projections.

30. With respect to Trillium's financial projections, the Proxy fails to disclose all line items used to calculate (i) Total Net Revenue; (ii) Gross Profit; (iii) Total R &D Expense; (v) Total SG & A Expense ; (vi) Operating Income; and (vii) Net Income.

31. The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company. In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the companies' financial advisors rendered in support of any fairness opinion.

32. Second, the Proxy omits material information regarding the analyses performed by the Company's financial advisor Centerview Partners LLC ("Centerview") in connection with the Proposed Transaction.

33. With respect to Centerview's *Selected Public Company Analysis*, the Proxy fails to disclose the individual inputs and assumptions underlying (i) the reference range of enterprise values for Trillium and (ii) the enterprise values calculated for the selected companies.

34. With respect to Centerview's *Selected Precedent Transaction Analysis*, the Proxy disclose the individual multiples and metrics for the transactions observed by Centerview in the analysis.

With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy fails to disclose (i) the terminal/continuing value of the Company; (ii) the individual inputs and assumptions

underlying the discount rate range of 11.0 % to 13.0 %.; (iii) Trillium's weighted average cost of capital; (iv) Centerview's basis to assume that unlevered free cash flows would decline in perpetuity after December 31, 2042 at a free cash flow decline of 40% year-on-year after 2042; (v) the tax savings from usage of Trillium's estimated net operating losses and other tax credits of $285 million as of December 31, 2021; and (vi) Trillium's estimated future losses as provided by Trillium's management

35. The omission of the above-referenced material information renders the Registration Statement false and misleading.

36. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

**CLAIMS FOR RELIEF**

**COUNT I**

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that Proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Defendants issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information

regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders as required.

41. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy. Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

42. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

### COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxyat issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

47.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or

gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: September 28, 2021

                                        **MOORE KUEHN, PLLC**
                                      */s/Justin Kuehn*
                                      Justin A. Kuehn
                                      Fletcher W. Moore
                                      30 Wall Street, 8th floor
                                      New York, New York 10005
                                      Tel: (212) 709-8245
                                      jkuehn@moorekuehn.com
                                      fmoore@moorekuehn.com
                                      *Attorneys for Plaintiff*